Okay, the next case, Haddon Housing Associates v. United States. This court should reverse the judgment below because HUD did not breach its contract with the United States or by adopting the 1% reduction in adjustment factors for non-turnover units. In addition, the court below erred by exercising jurisdiction over approximately the first six and a half months of Haddon's claim, which is outside the statute of limitations. I'd like to go through the years of adjustment that are in dispute chronologically if I could. 2001 and 2003 are the first category. And in those years, Haddon failed to comply with the condition precedent in the context, which is that Haddon had to make a request as the trigger for adjustments to its rent. You argue that somehow the prevention doctrine that the court relied upon can never apply where essentially the circumstance is absolute total futility. You make that argument at page 20 of your brief, but you don't cite any authority for that proposition. I don't think our argument is quite that strong. I think the point is that under the ACRA case, the point we're making there was under the ACRA case, a subjective perception of futility is not enough to excuse a party from complying with whatever requirements there might be under statute or contract in order to get that relief. So would the prevention doctrine apply if the government had refused to pay for 10 years as opposed to 3 or 4? At what point does the government make its intention clear with respect to its refusal to pay? In this case, the government's intention was clear from the beginning. HUD's position from 1994 to the present has never changed, which is that if a landlord has rent that is already above the fair market rents, the landlord must provide a rent comparability study in order to justify its request for an adjustment. What changed in this case was not HUD's actions, which were consistent throughout, but Haddon's actions. Sometimes during the relevant period, Haddon made requests. Sometimes during the relevant period, Haddon did not make requests, which undercuts both Haddon's excuse for not making requests in 2001 and 2003, that it believed that there was no point to making requests, because, again, at other points during the relevant period, Haddon did make requests. It undercuts the trial court's finding that, in fact, HUD materially contributed to Haddon's failure to make the request. The record, based on Haddon's own conduct, shows that although HUD was consistent, Haddon itself was inconsistent. But is it your point, as a matter of law, that no matter how unreasonable the government's requirements might be, so if, say, as an analogy, you say, we won't pay you unless you tie up all your employees and stick them in a closet, and so they say, well, at some point, we're not going to keep asking, because we know we're never going to tie up all our employees and stick them in a closet. Is it your view that, under the prevention doctrine, that unreasonable demands, let's assume they're unreasonable for purposes of this question, that unreasonable demands could never rise to the level of prevention? That's not our position. Okay, so at what point does it rise to the level of prevention? In the abstract, I'm not sure that we can say at what point it would. But I think we have to look at it in the context of this case, and I think the facts here, particularly Haddon's own conduct, shows that the government's position did not rise to the level of contributing materially to Haddon's not making requests in certain years, because in other years, both before and after 2001, Haddon did make requests. But doesn't this sort of open up the question of why they didn't make the request and what was bothering them and what the interactions were? Isn't that part of what's involved? That is certainly part of the factual determination that the trial court made here. And you're asking us to remake those facts? No, what we're asking the court to do is to acknowledge the clear error that was made by the trial court in concluding that it was because of HUD that in 2001 and 2003, Haddon did not make requests. Why is that a clear error? Why couldn't the trial judge give credit to what Haddon apparently felt about the whole situation and said it's useless? I think that if you look at the whole situation, that factual finding is implausible. Not to belabor this with too much of a litany, but if you start with 1996, Haddon made a request. HUD said no, no adjustment without a comparability study. Nonetheless, in 1997, another request was made. HUD's response was the same. Nonetheless, in 1998, another request was made. HUD's response was the same. 1999, Haddon decided not to make a request. Through 2003, they didn't submit any requests. 2002, they had a different reason for not submitting requests. It's because they got a comparability study that showed they were not going to be entitled to adjustment. 2003, they didn't make a request, but then in 2004, they again made a request. What's wrong with that? HUD said no. HUD can maintain its consistent position, but if you're a landlord and your rents are already higher than the fair market rents, you can't have an adjustment without a comparability study. Nonetheless, in 2005, another request was made, and the same thing happened in 2006. So if, in fact, Haddon truly believed it was futile in 2001 through 2003, what changed in the 2004 through 2006 period? Actually, nothing. Or conversely, if there was no reason that HUD was given that prevented the request from being made in 2004 through 2006, why was there a reason in 2001 and 2003? Your argument is they couldn't have been deterred in the earlier years by HUD's previous denials if later on they submitted the requests despite those earlier denials. In essence, yes. Doesn't that go to the whole dynamic of the relationship between HUD and Haddon during this extensive period, and isn't that what trials are all about? We're sitting here looking at a paper record. I also think you're spending an awful lot of time on this issue when you haven't even addressed the basic question, which is whether there was a breach of contract. But it's your case. You argue it the way you want to. With the court's permission, I will move on to the 2004 through 2006 period. The argument is that HUD breached the contract by requiring the loaner to provide a comparability study for those years, which Haddon did not do. That goes all the way back to 1995, doesn't it? It goes back to 1995 that HUD imposed this requirement, yes. But it's not within the statute of limitations period. Here, it's not until 2004 that a request was made without a comparability study. Requiring a comparability study from the landlord was not a breach of this contract because it's within HUD's exercise of its discretion under Section 2.7D of the contract. 2.7D? 2.7D, and 2.7B is also involved in this. What is the language in 2.7D that you understand to give the government the power to impose this new condition? Very specifically, it's the language in 2.7D that says, as determined by HUD. This analysis requires a few steps, so allow me to go through this. 2.7B provides that upon request, HUD will adjust the rents in accordance with the contract and the regulations, 24 CFR Part 888. At the end of 2.7B, it says, however, see Section 2.7D. 2.7D is the overall limitation provision of this contract. And it is closely tied to 2.7B because what it provides is that the landlord will not get any adjustment to the extent that adjustments would result in material differences between the adjusted rent and comparable unassisted rents, as determined by HUD. Clearly, HUD has discretion to make the material differences determination. It says it in 2.7D. The Supreme Court in the Alpine Ridge case acknowledged that. And the whole question in this case is, as determined by HUD, does that mean HUD has an obligation to determine the facts? Or does that mean that HUD, under the new rule, has an obligation to determine the facts, so that all HUD has to do is decide whether they want to agree or not? Because that is what it comes down to. Clearly, HUD has the obligation to make the determination, that is, to decide the facts. Based on? Based on 2.7D, HUD has the obligation to determine whether there is a material difference. Right. Right. But there is nothing in that contract that says that you can then place a material burden on patents. Well, as we point out in our briefs, it is a well-established principle that if a contract bests discretion in one party, that discretion has to be exercised reasonably. What is the discretion? The discretion is to determine the material difference. Now, in order to determine the material difference, it is reasonable for HUD to make that determination based on data. The data that HUD itself has, and that HUD sends resources to determine for hundreds of thousands of units, is to determine the fair market rents. And in 24 CFR 888.193, there is a description of the data sources that HUD uses. Now, what 1994 amendments and Notice 9512 provide is that if a landlord's rents are above his published fair market rents, in those circumstances, when presumptively the landlord is already above market and presumptively is not likely to get an adjustment, and wants to essentially disprove what HUD has already developed in its fair market rental calculations, in that limited circumstance, the landlord needs to provide the information necessary to disprove HUD's own FMR numbers. What HUD said, essentially, is we won't even consider these requests in the absence of submission of a comparability study. Isn't that right? In certain circumstances, yes, John. So, in other words, HUD just said we're not going to exercise our obligations under the contract because we want you to do something first and you haven't done it. What HUD was saying, essentially, is we need information from the landlord in these limited circumstances where you, the landlord's, likelihood of getting an adjustment is low. We need you to be able to justify, give us the information that's necessary for us to reasonably exercise our contractual discretion to determine material difference. To determine the facts. To determine the material difference. To determine the material difference, which is a fine of a fact, but it has to be based on data, which, again, HUD has its own FMR data, but it doesn't have the particular specific data that would undercut its own data, show that its own FMRs are wrong, and that's what it is asking. So the key question is what is as determined by HUD? How broadly can that be read? Let me give you a hypothetical and see how you would deal with it. Let's assume that Congress, in an act of excessive bipartisanship, which we all favor, I'm sure, now, enacts legislation that says that the presiding judge of a panel must determine the conditions of the courtroom before a panel can sit in order to ensure habitability and comfort. And a visitor comes in and says to the guard, God, it's hot down there. And the guard reports it to the presiding judge. And the presiding judge says to the guard, tell that complainer to take the temperature of the courtroom. Take the temperature of the other courtrooms in the building and provide me with a chart showing how the temperatures in the building vary from week to week and month to month, and then I will make a determination as to whether it's comfortable in that courtroom. We wouldn't think that would work, would we? If that sort of data input is necessary for the presiding judge to make the determination that she has discretion to make... Do you think that would be a reasonable behavior on the part of the presiding judge in carrying out a statutory mandate to determine the comfort of the courtroom? The issue could be taken, perhaps, with the level of detail that the presiding judge required, but the general concept would be within the presiding judge's discretion under that hypothetical. All right. Your time is up, but Judge Ray has one question. Yeah, a very quick question relating to the jurisdiction issue over the year 2000. Can you make a quick comment on that? The statute of limitations issue depends on when the cause of action actually accrued and not when it could have accrued. In this case, when does it accrue? Does it accrue at the beginning of the anniversary date or during the contract period itself for that year? More specifically, under the Tucker Act, when does a year accrue? What I'm battling with is whether what the district court did was take contractual obligations and its interpretation as to when contractual obligations accrue under the contract and extend that under a statute of limitations statute under the Tucker Act. The Tucker Act statute of limitations 28 U.S.C. 2501 does apply here. The complaint was filed on September 4, 2007, and so under 28 U.S.C. 2501, as interpreted by the John R. Sand case that we cited, the court has no jurisdiction over any claims that accrued more than six years before it was filed, that is, before September 4, 2001. Now, in this case, the contract anniversary date, I don't think there's any dispute about this, is March 17 of each year. March 17, 1981 was the effective date. So for what you might call the contract year 2001, that begins on March 17, 2001 and extends until March 16, 2002. The contract provides that rents will be adjusted by HUD on the contract anniversary date. Notice 9512 does provide that requests for an adjustment that are made after the anniversary year can still take place going forward, respectively, 50 days after those requests are made. However, no such request was made in this case. No request was made at all for the year 2001. The judge concluded that for the year 2001, the obligation of Haddon to make a request was excused. Based on that ruling, what is left is a contractual provision that says simply, HUD shall adjust rents on the anniversary date. For the year 2001, that was on March 17, 2001. HUD had a duty to adjust on that date. HUD did not adjust on that date. And at that point, everything necessary to fix the government's liability was in place. Therefore, the cause of action for breach of contract for the year 2001 accrued on that date. March 17, 2001 is about five and a half months before September 4, 2001, which was the date on which all claims would have to have been filed. Thank you. Okay. We'll give you two minutes for rebuttal. Mr. Valzani, we'll add three minutes to your time to the extent that three. Try to even it out here if you need it. May it please the Court, my name is Mark Valzani. I represent the plaintiff, Appalese in this case, and Housing Associates. It is our position, with respect to the first four issues that are raised in our brief, that the trial court's decision should be affirmed on all four of those issues. And the first issue, and these are a little bit different chronologically than how Mr. Kohik started his argument, but I'm going to follow the way the judge had it in his opinion. And it starts with the rent adjustments that the trial court ordered for the years 2004, 2005, 2006. When Haddon submitted a simple request without a rent study, and the court held that HUD's refusal to process the request without a rent study breached the HAP contract because HUD's imposition of the additional duty on Haddon to provide a rent study beyond a simple request breached the HAP contract that was entered into in 1981. How do you respond? Your friend on the other side argued that the reason that it was reasonable to make the request in these circumstances is that on its face there was already a differential that HUD felt justified additional inquiry. So do you agree factually that that was true in each of those years? In some of those years, Your Honor, the existing rent that Haddon was charging its tenants was above fair market rents. But as Judge Letow held, he analyzed all of the changes in the Housing Act which took place between 1981 when this particular HAP contract was signed and the 1994 amendments. And he said it was in the 1994 amendments that the duty was imposed on the owners to obtain the rent studies. And Judge Letow held that the fact that that duty was specifically imposed by statute in 1994 undercuts the government's argument that the discretion as HUD has pointed out here this morning existed in the original contract. Could HUD have simply just denied the request on grounds that you were already charging above fair market value regardless of whether you submitted a comparability study? No, Your Honor, because there's that additional analysis that has to be done as to whether or not the amount that you're charging above fair market rent exceeds the material difference. You would sue them under the APA for arbitrary and capricious action if they did that, I assume. Yes, Your Honor. What's wrong with the government trying to get help in its information gathering process? The requirement doesn't spell out, does it, in great detail exactly what is needed for you to report, does it? There was a specific form that HUD wanted the owners to fill out. How burdensome was that? It was burdensome. Do you have data? We didn't have to get an appraiser, and they are not free. And as the court ordered that HUD reimburse us for a couple comparability studies that we did obtain, and they cost several thousand dollars apiece. Why isn't that a reasonable extension of the obligation that you had under the contract to submit a rent request? Why isn't it a reasonable extension to require that a comparability study be submitted? Go ahead. Because it imposes an additional burden on the owner that was not part of the bargain floor consideration in the original contract. If a private party instead of the government... The original contract contemplated rent based on marketability. So why isn't this a reasonable extension of the requirement that you submit a request for rent? Well, with a rent study, we're seeing that the submission of the request, the simple request, was something that was required under the contract, and we have no problem with that. It's the addition of providing a rent study with the request that not only bothered this trial court, but as far as I can tell, any other court that has addressed that issue has held that the imposition of the rent study mid-contract breached these HAP contracts. Let's go to the simplicity of that request, that you say just a simple request is all that's needed. How can you justify relying on the prevention doctrine to not make that simple request in the 2001-2003 timeframe when it was so simple? And again, the record below is clear on this, and this was not decided on summary judgment. It was decided at trial, so Judge Letow observed the witnesses testify, and they hadn't witnessed testified that for the years 96, 97, 98, she submitted the simple request without the rent study. And each time hadn't rejected the request for the rent increase. So she just chose not to submit new requests because she thought they'd be denied. Because she thought it would be a futile, useless act. And how is that prevention? How is that an actual hindrance by the government to the act of making a request? Well, as the trial court found, this was an additional burden placed on the owner, and to require the rent study, which costs money, was a breach of the implied duty that parties to a contract have to treat each other in good faith and in fair dealing. And the simple requirement that this rent study be included with the request hindered the performance of the owner. You agree that, at least under our case law, where you have yearly obligations by the government, that a party can't rely on an anticipatory breach theory to argue that the government has breached its obligation going forward by having breached it in the past, right? Yes, Your Honor. All right. So how is this use of the prevention doctrine not simply an end run around that case law? Because I think the trial court was correct in – because the other piece of the testimony above was the testimony from the HUD representative who said unequivocally that if a rent request during this timeframe came in without a rent study, the process for adjusting the rent stopped. So it's not like an anticipatory breach. You knew that the government was not going to adjust the rent. But now on the 2002 case, you did the rent study. Yes. And you looked at it and said, we won't bother, right? Yes. What's wrong with that? Well, our position on that, Your Honor, is that as Judge Letow said in his opinion, the government should not be able to benefit from its breach. And the only reason – The reason you did not follow that was because you thought that it would cause a rent increase. I mean, a rent decrease. Yes, a decrease. That's what the testimony was, Your Honor. So it was based on something – your decision was based on something other than the futility of compliance. Well, you made a judgment call that on this evidence, we're not going to get an adjustment, so forget it. What's wrong? It's our position. Why is the judge wrong? Why is the judge wrong in accepting your position there Warren, you're arguing the judge wasn't wrong in accepting your position on the others when you didn't submit the request. Because the court held that the government should not benefit from its breach of the contract. And the only reason he hadn't got that rent study in 2002 was because of the government – But you did get it. We did get it. And you didn't go forward with it. We did not go forward, Your Honor. Your court said that was your decision. But if the rent increase is not granted for 2002, Haddon is penalized for going out and getting a rent study which had been held to constitute a breach of the contract. So Haddon gets penalized for getting a rent study which it shouldn't have had to have gotten and the government benefits from the fact that Haddon went out and got the rent study which it did not use. And, Your Honor, if you look at the timing of when the requests were made by Haddon in 96, 97, and 98, in all three of those years, those requests were made in mid-January, just slightly before the 60-day requirement in 95-12 that you submit your rent increase request 60 days before the anniversary date, which is March 17. So Haddon did not submit a request in mid-January of 2002. The rent study that they eventually got in 2002 is part of a record. It's dated February of 2002. So 30 days after Haddon would have typically made a request for a rent increase, this rent study comes in. They obviously look at it. They make a telephone call and decide not to pursue it for that year. Well, going back to your statute of limitations argument, you argued that you were allowed to make the request at any point during the course of the year. So even if that argument were correct, that somehow you were excused from making the request in 2002 as of that time period 30 days later when you made an additional decision not to make the request, why wouldn't that cut off that year anyway, or at least 11 months of it, under your own statute of limitations theory? Well, just to show Your Honor that the rent study, it would be our position based on that timing, the receipt of the rent study did not affect the original decision not to make the request in mid-January. But it certainly, I mean, the trial court made findings of fact based on testimony that there was an affirmative decision made 30 days later. Right. Okay. Do you want to address the 1%? Yeah, good. Thank you. Yes. Again, it would be our position that the trial court correctly decided that the imposition of the 1% reduction in the AAF for the non-turnover units breached the HAP contract. And if you look at what the requirements are in the Housing Act for the rent adjustments, they are to be based on either market data or a reasonable formula. Is it your argument that the congressional findings were inadequate to support any differential as it relates to non-turnover units? Or is it your argument that while some differential might have been justified based on those findings, there's nothing to get you to 1%? Yes. Which one is it? Well, I would take the position that an owner who maintained a property as has been described in footnote, I believe it's 12, of the opinion that it's in exemplary condition, has a long waiting list, which means it has low turnover. You're arguing on the merits of the 1%. The judge asked a little different question. What's your theory? My theory would be that perhaps there should not be a reduction at all in the AAF for non-turnover units. Okay. But the problem here is that Congress had information before it from which it could reasonably make a determination. The question for us is not whether Congress made the right determination, but whether it made an arbitrary determination. Did Congress dictate 1%? I haven't found your statute for which I apologize. Did Congress dictate that it had to be a 1% reduction, or did Congress simply authorize HUD to make that determination up to 1%? How did it work? I believe that it was the Secretary of Housing and Urban Development that determined the 1%. What did Congress say in its statute? I think all they said was that the rents can be adjusted with market data or the application of a reasonable formula. But never less than 1%. But the statute doesn't say 1%. Well, we'll ask the government that same question, because that's maybe why I couldn't find it in the statute. I don't believe it's in the statute. I believe it was a Secretary determination. Okay. Thank you. Okay. Thank you. Can you help us on that last point? Yes, Your Honor. The statute that was amended in 1994, and this is 42 U.S.C. 1437 F.C. 2A, provides that except for assistance of the certificate program for any unit occupied by the same family at the time of the last annual rental adjustment, where the assistance contract provides for the adjustment of maximum monthly rent by applying an annual adjustment factor, and where the rent for a unit is otherwise eligible for an adjustment based on the full amount of the factor, 0.01 shall be subtracted from the amount of the factor, except that the factor should not be reduced to less than 1. The issue on 1% I'm trying to figure out whose 1% is it. Is it the Congress's 1% or is it HUD's 1%? How am I to understand that? In the context of the issue before the court, the specific question is, was it reasonable for HUD to apply to this landlord under this contract a 1%? You have to answer Judge Fletcher's question. I'm sorry. It was HUD who determined that the 1% shall apply to this particular landlord. In the sense that HUD complied with the amended statute. HUD relied on Did HUD have a choice? I don't think HUD believes it has a choice. What does this mean? HUD applied the 1% because HUD was following the statutory amendment. The question is, was HUD reasonable to do so? And as Judge Leto observed, HUD was relying on what was before Congress, which was evidence that if turnover is less, operating costs are less, and the But did HUD, did Congress in its findings, to my knowledge, they never discuss their particular project, did they? No. No. Did they have anything in front of Congress that dealt with their project? No. So it was HUD's determination that for their project it's 1%. Strictly speaking, that is correct. The only way to speak. HUD followed the 1994 amendments, which prescribed a 1% reduction in the AAS with respect to this project. So the question is, were they rational? The answer would be yes because of the information before Congress and Congress's determination that because turnover costs were lower I was trying to determine whether the question was whether a rational Congress would do that. And since that's a very difficult question, I'm glad we don't have it. Do you happen to have the appendix in front of you? Maybe you remember the question I have for you. One quick question, Madam Provider, if I may. Your joint stipulations of fact for trial, its appendix page, beginning on appendix page 61. On page A66 and A67, there's a table of years from 1982 to 2010 and FMR meaning, I assume, fair market rents. Correct. And contract rents. Correct. Whose table is that? Is that something HUD puts together? This is a table that I was not involved in the trial in this case myself. But my understanding is this is a table, like all these stipulations, that was developed jointly by the parties. But is it HUD's data? I'm trying to figure out what more HUD needed than what that table is from HUD's own database. HUD puts together the fair market rentals and publishes those. So that is HUD data. Contract rent is the rent for this case. Well, thank you. Okay. Thank you. The case will be submitted.